## WELDT *v.* THE HOWDEN.

*(District Court, S. D. California.* September 11, 1889.)

1. PILOTS—PORTS.
   A vessel lying under the protection of Point Fermin, which is a well-defined headland on the northerly side of the bay of San Pedro, will be held to be within that bay in the absence of any legally defined limits thereof.
2. SAME.
   Where it appears that such bay and the port of Wilmington have always been locally regarded as identical. and that congress, by legislation, has recognized San Pedro as a port, and changed its name to that of the port of Wilmington, and referred to the bay as the bay of Wilmington, such bay will be held a port, within Pol. Code Cal. § 2436, providing for compensation to pilots at "ports," irrespective of its merits as a harbor.

In Admiralty. Libel to recover half pilotage.
*Stephen M. White,* for libelant.
*Mortimer & Harris,* for respondent.

Ross, J. At the times stated in the pleadings, the libelant was a duly licensed pilot "for the port of Wilmington and bay of San Pedro," and, as such, spoke the British bark Howden, bound for San Pedro, and tendered his services as pilot. His services being declined by the master of the bark, libelant commenced the present proceeding, claiming to be entitled to half the usual rate of pilotage by virtue of section 2436 of the Political Code of California, which provides, among other things, that pilots for all of the ports of this state other than San Francisco, Mare island, Benicia, and Humboldt bay, are entitled to receive for piloting every vessel into or out of port the sum of eight dollars per foot draught, and that, when the person commanding any vessel refuses to take a pilot, the pilot first offering his services is entitled to half pilotage.

That the state has the right to impose half pilotage on foreign vessels entering the ports of the state, and declining the services of a pilot, was

decided by Judge HOFFMAN in *Alameda* v. *Neal*, 31 Fed. Rep. 366, and his ruling was affirmed on appeal by Mr. Justice FIELD, 32 Fed. Rep. 331. In the present case that right is conceded by the respondent, but the defense is made—*First,* that the Howden was not bound for and did not enter the port of Wilmington or the bay of San Pedro; and, *second,* that if she did enter the bay, that that bay is not a port within the meaning of the pilot laws; that the only port at that point on the coast is the port of Wilmington, and that the port of Wilmington and the bay of San Pedro are not one and the same, but on the contrary, that they are two totally distinct geographical places.

The case shows that the limits of the bay of San Pedro have never been defined by any competent authority; nor is the line that separates the bay from the ocean attempted to be delineated upon the United States coast survey chart. Indeed, it may not be an easy matter to define it for the reason that while upon the northerly side of the bay there is a well-defined headland, called "Point Fermin," there is none to the southward within such a distance as that it may be reasonably said to have any connection with the bay of San Pedro. In the absence of any legally defined limits to the bay, I think it fair to hold that all vessels that lie under the protection of Point Fermin are within the bay of San Pedro; and that the Howden was in that position I think appears from the evidence.

The bay of San Pedro and the port of Wilmington, it seems from the evidence, have always been locally known and regarded as one and the same. Originally, all vessels coming into those waters discharged their cargo at San Pedro, and from there the freight was sent by wagon to Los Angeles. San Pedro was, and is, a little settlement or town on the bay of that name. In 1852, Gen. Phineas Banning was conducting the principal business there, and as he was located on the government reservation at that place he was required to move off. Somewhere about the latter part of 1853 he removed his business from San Pedro and established it at Wilmington, which is situated on an inlet a few miles further inland. Not only have the bay of San Pedro and the port of Wilmington been locally regarded as one port or harbor, but that they are and have been so regarded by congress is clearly shown from the following legislation: By an act approved September 28, 1850, the town of San Pedro was constituted a port of delivery in the collection district of San Diego. 9 U. S. St. 508. By an act approved August 3, 1854, the collection district of San Pedro was created, and San Pedro was made the port of entry for said district. 10 U. S. St. 345. By an act approved June 2, 1862, the collection district of San Pedro was abolished, and the same was attached to the district of San Francisco. 12 U. S. St. 411. By section 2582 of the Revised Statutes, the state of California was divided into two collection districts, the first being the district of San Diego, in which San Diego was made the sole port of entry, and San Pedro and Santa Barbara ports of delivery. By an act approved June 6, 1874, the name of the port of San Pedro was changed to that of Wilmington. 18 U. S. St. 61. By an act approved June 10, 1880, the

privilege of immediate transportation was extended to various named ports; among others, to that of Wilmington. 21 U. S. St. 174. And by an act approved June 16, 1882, the collection district of Wilmington was created, in which Wilmington, on the bay of Wilmington, was made the sole port of entry. 22 U. S. St. 105. By the legislation referred to not only did congress recognize the fact that there was a port at San Pedro, but by changing the name of the port of San Pedro to that of Wilmington and by referring to the bay of San Pedro as the bay of Wilmington, it gave unmistakable evidence that it regarded the one as identical with the other. Whether or not the port is a good and safe harbor does not affect the question. It is a place for which many vessels are bound, and at which it is usual for them to load and unload; and it is the place for which the Howden was bound, and at which she discharged her cargo.

In my opinion the libelant is entitled to half the usual rate of pilotage, as provided by section 2436 of the Political Code of California; and accordingly a decree will be signed for libelant, with costs.